IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ARMENTA, | CASE NO. CV F 10-0593 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| ALLSTATE INDEMNITY COMPANY, et al., | |
| Defendants. | |

Pursuant to notice filed on August 12, 2011, defendant Allstate Indemnity Company moves for summary judgment pursuant to Rule 56. Plaintiff Maria Armenta filed an opposition on August 29, 2011. Allstate filed a reply on September 2, 2011. Pursuant to Local Rule 230(g), this matter is submitted on the pleadings without oral argument, and the hearing set for September 12, 2011 was VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.[1]

---

[1] The parties have filed numerous objections to the evidence submitted by the opposing side. The Court has not relied on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment as to the claims, the Court found triable issues exist regarding the issues. To the extent that the Court may have considered some of the disputed evidence in finding that triable issues exist regarding the claims, the objections are OVERRULED. Further, the Court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

1

**FACTUAL OVERVIEW**

**A.  Underlying Action**

Defendant Allstate Indemnity Company ("Allstate") issued an auto policy ("policy") with $100,000 liability limits to Andres Herrera ("Mr. Herrera"). On April 16, 2004, when the policy was in effect, Mr. Herrera drove his auto and rear-ended Ms. Armenta's auto stopped at a red light causing Ms. Armenta "serious bodily injuries."

On May 21, 2004, Ms. Armenta filed a state court action ("underlying action") against Mr. Herrera. Ms. Armenta made a statutory offer to settle on August 28, 2008 for $50,000.00. Allstate's last offer was $6,800. Neither party accepted the other party's offer to settle.

After a December 2008 trial, the jury found Mr. Herrera negligent and awarded $228,944.94 in Ms. Armenta's favor, plus costs. Allstate paid $100,000 to Ms. Armenta which partially satisfied the judgment. In exchange for Mr. Herrera's assignment of his claims against Allstate, Ms. Armenta agreed not enforce the balance of the judgment against Mr. Herrera.

**B.  Ms. Armenta's Assigned Claims**

The complaint alleges breach of the duty to defend and breach of the implied covenant of good faith and fair dealing. Ms. Armenta claims that Allstate breached its obligations to Mr. Herrera to settle the underlying action within policy limits "when it was reasonable to do so" given that Ms. Armenta offered to settle for $50,000. The complaint seeks to recover the $228,944.94 judgment and $51,696.87 interest assessed in the underlying action "less any amounts paid in satisfaction of the judgment."

**ANALYSIS AND DISCUSSION**

**A.  Summary Judgment/Partial Summary Judgment Standards**

Fed.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. Fed.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct.

1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

**B.     First Claim for Breach of the Duty to Defend**

Plaintiff's first claim for relief is for breach of Allstate's duty to defend Mr. Herrera in the underlying action.

An insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement; this duty is separate from and broader than the insurer's duty to indemnify. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370 (1995). Although broad, the duty to defend is not unlimited; "it is measured by the nature and kinds of risks covered by the policy." *Id.* Doubt as to whether the facts establish the existence of an insurer's duty to defend must be resolved in the insured's favor. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993).

Plaintiff's opposition to the motion concedes that Allstate defended the underlying action. Plaintiff states in her opposition that, "Plaintiff concedes that Allstate did not breach the duty to defend." (Doc. 26, Opposition p.1:28.) Indeed, it is undisputed that Allstate retained counsel to defendant Mr. Herrera in the underlying action and that Mr. Herrera was represented through trial in the underlying action. Accordingly, as plaintiff concedes that Allstate did not breach its duty to provide a defense in the underlying action, and Allstate in fact provided a defense, the motion will be granted as to this claim.

## C.  Breach of the Covenant of Good Faith and Fair Dealing

Ms. Armenta's second claim for relief is for breach of the covenant of good faith and fair dealing.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 659 (1958). This principle applies to insurance policies. *Id*. To establish a breach of the implied covenant of good faith and fair dealing under California law against an insurance company, a plaintiff must show: "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

An "insurer's erroneous failure to pay benefits under a policy does not necessarily constitute bad faith entitling the insured to recover tort damages." *Opsal v. United Services Auto. Ass'n.*, 2 Cal.App.4th 1197, 1205 (1992). "The ultimate test of bad faith liability in the first party cases is whether refusal to pay policy benefits was unreasonable." *Id.* "When benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because they

4

frustrate the insured's right to receive the benefits of the contract in prompt compensation for losses." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th at 36. On the other hand, an insure is entitled to summary judgment on a breach of good faith and fair dealing claim where it provides a rational basis–whether correct or not–to question an insured's claim. *See Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292 (2000).

### 1. Duty to Investigate

Ms. Armenta argues that Allstate failed to investigate the claim such that Allstate was not fully informed of the potential damages which might exceed the policy limit. Ms. Armenta argues that Allstate knew the insured, Mr. Herrera, was the driver of the vehicle, that Mr. Herrera had fabricated a story about being a passenger, that he would testify as to that fabricated story and that it would come out that Mr. Herrera was intoxicated at the time of the accident. Ms. Armenta argues that Allstate should have anticipated that based upon this evidence, the judgment would exceed the policy limit. (Doc. 25, Opposition p. 6-7.)

The insurer's duty to protect the insured's interests obligates it to investigate a claim thoroughly: "(I)t is essential that an insurer fully inquire into all possible bases that might support the insured's claim ... (A)n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 819, 169 Cal.Rptr. 691, 695–696 (1979), *cert. denied*, 445 U.S. 912 (1980). An insurer's duty extends to whatever facts or coverage theories would support recovery under the policy. The insurer must "fully inquire into possible bases that might support the insured's claim." *Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1072, 56 Cal.Rptr.3d 312, 319 (2007).[2] An insurer breaches the implied covenant by denying an insured's claim without first thoroughly investigating " all of the possible bases" of the

---

[2] Ms. Armenta's case is a first party coverage case. "In the usual first party policy, the insurer promises to pay money to the insured upon the happening of an event, the risk of which has been insured against. In the typical third party liability policy, the carrier assumes a contractual duty to pay judgments the insured becomes legally obligated to pay as damages because of bodily injury or property damage caused by the insured." *Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal.4th 645, 663, 42 Cal.Rptr.2d 324, 332 (1995). Although the same implied covenant of good faith and fair dealing is involved in both first party and third party bad faith cases, the claims and settlement procedures "may differ significantly." *Howard v. American Nat. Fire Ins. Co.*, 187 Cal.App.4th 498, 530, 115 Cal.Rptr.3d 42, 70 (2010). This case is a first party case because Ms. Armenta stands in the shoes of Mr. Herrera, the insured, and is suing for the acts and duties Allstate owed to him.

claim. *Jordan*, 170 Cal.App.4th at 1073

Here, Ms. Armenta's argument fails to identify anything that Allstate did in bad faith in its investigation. Indeed, it is undisputed that Allstate investigated the accident, that Allstate provided a defense to Mr. Herrera and that Allstate did not deny liability. Allstate presents evidence that it investigated the extent of Ms. Armenta's damages which discovery disclosed consisted of damages in the $6,800 range. Ms. Arementa does not identify what Allstate did as part of its investigation which did not fully comply with coverage under the policy. Allstate did not breach any duty to investigate, because Allstate investigated the claims and in fact provided a defense and admitted coverage.

Ms. Armenta argues that Allstate failed to investigate by failing to have an independent medical examination or depose treating physicians.

Allstate investigated the extent of Ms. Armenta's damages in the litigation during discovery. Allstate inquired of Ms. Armenta's injuries and found nothing in the discovery responses which would have hinted that her injuries were more than she disclosed. She disclosed neck and back injury. Allstate reviewed the medical records. The evidence disclosed to Allstate did not show potential injuries approaching the amount of the settlement offer. Allstate owed the duty to its insured, Mr. Herrera, to investigate and provide a defense to Mr. Herrera. Allstate did so. *Estate of Parker ex rel. Parker v. AIG Life Ins.*, 317 F.Supp.2d 1167, 1171 (C.D. Cal. 2004) (first-party insurers have a duty to fully investigate an insured's claim, to determine all possible bases that might support coverage). This Court sees no evidence to find a breach of the duty to investigate in this particular case for failure to undertake a specific form of discovery. Since Allstate investigated the claims and injuries made by Ms. Armenta in the underlying action, Allstate did not breach its duty.

**2.  Breach of Duty to Settle**

To assert a claim for breach of the implied covenant of good faith and fair dealing, Ms. Armenta must show that:

> the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

6

1  *Chateau Chamberay Homeowners Assoc. v. Assoc. Int'l Ins. Co.*, 90 Cal.App.4th 335, 347-48 (2001).

2  It is a long-standing rule that "the only permissible consideration in evaluating the reasonableness
3  of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the
4  insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Howard v.*
5  *American Nat. Fire Ins. Co.*, 187 Cal.App.4th 498, 530, 115 Cal.Rptr.3d 42, 70 (2010), citing *Johansen*,
6  15 Cal.3d at 16, 123 Cal.Rptr. 288, 538 P.2d 744. If an insurer is to avoid liability for bad faith, its
7  actions and position with respect to the claim of an insured, and the delay or denial of policy benefits,
8  must be "founded on a basis that is reasonable under all the circumstances." *Bosetti v. U.S. Life Ins. Co.*
9  *in City of New York*, 175 Cal.App.4th 1208, 1237, 96 Cal.Rptr.3d 744, 769 (2009), citing *Wilson v. 21st*
10 *Century Ins. Co.*, 42 Cal.4th 713, 724 n.7, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (2007).

11  Here, the Court must evaluate the reasonableness of the settlement offer of August 2008, as of
12 the time of the offer. Subsequent evidence and events do not enter into the evaluation of the
13 reasonableness of the insurer's conduct. "The reasonableness of the insurer's decisions and actions must
14 be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of
15 subsequent events that may provide evidence of the insurer's errors." *Chateau Chamberay*, 90 Cal. App.
16 4th at 347.

17  Allstate contends that because it based its decision on the findings of its investigation and
18 opinions of its experts, it is entitled to judgment as a matter of law. To support the reasonableness of its
19 decision not to settle with Ms. Armenta for $50,000, Allstate points to the following evidence: (1) Ms.
20 Armenta's discovery responses showed she claimed $1,036 in past medical expenses and $3,000 in
21 future medical expense, (2) the report of retained counsel Brian O'Hara summarized discovery which
22 showed Ms. Armenta did not claim lost earnings or capacity, (3) Ms. Armenta's medical records showed
23 she was treated for neck, lower back, and spine injury, with an adjusted value of about $6,854, (4) the
24 advice of two separate counsel that the value of the claim was well below the $100,000 policy limit, and
25 (5) opinions of retained counsel, Brian O'Hara, and Allstate's own counsel, Paul O'Rouke, who each
26 opined that the $50,000 settlement demand was grossly excessive. Allstate's retained expert and outside
27 counsel both concluded that the claim was not worth more than the policy limits and worth only about
28 $6,600. *See Chateau Chamberay,* 90 Cal. App. 4th at 347-48 (an erroneous coverage denial does not

give rise to bad faith liability if the insurer reasonably relies on the opinions of outside professionals in making its decision).

The implied covenant obligates the insurer to settle where there is a "substantial likelihood" or "great risk" of recovery in excess of the policy limits. *Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937, 941, 132 Cal.Rptr. 424, 426 (1976) ("substantial likelihood"); *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 659, 328 P.2d 198, 201 (1958) ("great risk"). *See Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 58 Cal.Rptr. 13 (1967) ("when there is great risk of a recovery beyond the policy limits ... a consideration in good faith of the insured's interest requires the insurer to settle the claim ... In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer.")

The rejection of the $50,000 settlement offer did not expose Mr. Herrera to "great risk" or "substantial likelihood" that a judgment would exceed the $100,000 policy. At the time of the offer, all of the evidence supported damages in the $6,000 to $7,000 range. Ms. Armenta's medical records, O'Hara's summary of discovery and Ms. Armenta's own Statement of Damages all reflected that her injuries were limited to soft tissue damage resulting in neck, back and leg pain, and that she claimed special damages totaling only $6,694.94. She did not claim loss of earnings or capacity. It is undisputed that nothing in Ms. Armenta's medical records reflected other extensive injuries, such as incontinence of bowel or bladder function. (Doc. 28, plaintiff response fact no.24.) Ms. Armenta does not dispute that the evidence submitted at trial of her bladder and bowel function was different from the evidence known to Allstate at the time of the $50,000 settlement offer in August 2008. It is undisputed that Ms. Armenta did not disclose in discovery that she had bladder or bowel injuries arising from the accident. (See Doc. 28, Undisputed fact no. 24.) All of her responses were limited to neck, back and leg pain and damages in the range of $6,000 to $7,000. It is undisputed that the first notice any one had of the bowel and bladder injuries was the day before Ms. Armenta's expert testified at trial in December 2008. (Doc. 23, Joint Fact 51, 52.) Thus, the rejection of the $50,000 did not expose Mr. Herrera to great risk or substantial likelihood that the award would exceed the policy limit because the extensive injuries were unknown to Allstate when it rejected the offer.

The focus of the Court's evaluation of the reasonableness of Allstate's conduct is at the time

Allstate rejected the $50,000 settlement offer.[3] As shown above, the case value did not approach the $50,000 value, based upon the evidence known at the time of the settlement offer. It is undisputed that at the time of the settlement offer, Ms. Armenta's injuries were within the $6,000 - $7,000 range. *Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, 15 Cal.3d 9, 16 (1975) (the reasonableness of the settlement demand depends on the victims injuries and the probable liability of the insured.)

Plaintiff argues that the excess judgment alone raises an inference of bad faith. (Doc. 25, Plaintiff's opposition p.6.) Plaintiff argues that the $50,000 settlement offer was reasonable in light of the excess judgment. Plaintiff argues that Allstate should have known the jury would in incensed by Mr. Herrera's fabricated "passenger" story and for his drinking admission.[4]

"The size of the judgment recovered in the [underlying] personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim." *Johansen v. California State Auto. Assn. Inter-Ins. Bureau*, 15 Cal.3d at 17. Nonetheless, the test for bad faith is not determined by hindsight. *Hodges v. Standard Acc. Ins. Co.*, 198 Cal.App.2d 564, 18 Cal.Rptr. 17 (1961). "Experience shows that in looking ahead no one can predict what any particular jury will do."[5] *Id.*

Here, the evidence presented at trial and the jury's verdict do not raise issues of fact as to

---

[3] It is undisputed that Ms. Armenta did not make any other settlement offers after the $50,000 offer lapsed. (Doc. 23, Joint Facts 63 ("No new settlement offer or demand was made during the trial of the Underlying Action.")) An insurer does not breach the duty to settle if it never had an opportunity to settle. *Howard v. American Nat. Fire Ins. Co.*, 187 Cal.App.4th 498, 525, 115 Cal.Rptr.3d 42 (2010).

[4] Ms. Armenta also argues that the default judgment is evidence of the value of the case. Ms. Armenta argues that the case was worth more than the $50,000 offer because the Superior Court judge entered a default judgment of $354,362.50. The default judgment, however, was later set aside and the case proceeded to discovery and trial. The default judgment entered does not convey the value of the case.

[5] Plaintiff incorrectly summarizes *Hodges v. Standard Accid. Ins. Co*. Plaintiff cites this case for the proposition that "hindsight" determines bad faith and that the bad faith is determined <u>at the time of trial</u>. (Doc. 25, Opposition p. 8 (emphasis added).) *Hodges* does not stand for either of these propositions. To the contrary, *Hodges* stated that bad faith is *not* to be determined by hindsight. *Hodges,* 198 Cal.App.2d at 575 ("We do not believe the test of bad faith should be determined by hindsight.") Further, bad faith is not determined necessarily at the time of trial. *Hodges* involved three re-trials of the action where defendant had prevailed on two of the trials. The settlement offer had been made during the first trial with no new offer made at any other time. *Id.* The Court said, "The time when the issue of bad faith of the insurer must be measured is immediately prior to, or during, the trial of the personal injury action resulting in the verdict in excess of the policy limits." *Hodges* does not stand for the general proposition that all settlement offers are measured at the time of trial.

9

Allstate's bad faith. This Court must evaluate the settlement demand based on the evidence known at the time of the demand. The trial, and evidence presented at trial, occurred months after the settlement demand and do not factor into the evaluation. It is undisputed that the evidence of Ms. Armenta's bladder and bowel injuries first surfaced during the trial. The parties stipulated that these injuries were unknown to Allstate at the time of Ms. Armenta's $50,000 settlement demand. In this case, Allstate underestimated the value of the case, but this underestimate was reasonable in light of all of the evidence known at the time of the $50,000 settlement offer. There is no evidence to suggest any kind of "culpability" in Allstate's conduct. Plaintiff has not come forward with evidence which raises an issue of fact that rejection of the $50,000 was unreasonable.

## **CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1. The motion for summary judgment as to the first claim for relief for breach of the duty to defend is GRANTED.
2. The motion for summary judgment as to the second claim for relief for breach of the covenant of good faith and fair dealing is GRANTED.

IT IS SO ORDERED.

**Dated:   September 20, 2011**               /s/ Lawrence J. O'Neill
                                                                            UNITED STATES DISTRICT JUDGE